Argued and submitted January 5; decision of Court of Appeals reversed, order of circuit court reversed, and case remanded to circuit court for further proceedings June 24, 2021

RONALD KENNETH STRASSER,
*Petitioner on Review,*

*v.*

STATE OF OREGON,
*Respondent on Review.*

(CC 17CV19138) (CA A166365) (SC S067541)

489 P3d 1025

Petitioner, whose direct appeal from a judgment of conviction was dismissed by the Court of Appeals as untimely filed, argued in a subsequent post-conviction proceeding that appellate counsel was constitutionally inadequate in failing to request leave to file a late notice of appeal within the applicable 90-day window and that petitioner therefore was entitled to a delayed direct appeal. Petitioner also argued in the post-conviction proceeding that, by appointing counsel only four days before the deadline for filing a motion for a late appeal, the Court of Appeals had effectively *failed* to appoint appellate counsel and that, therefore, the ordinary statutory bar on raising claims in a post-conviction proceeding that could have been raised on direct appeal was inapplicable and the post-conviction court could decide petitioner's claims alleging substantial denials of his constitutional rights at trial. The post-conviction court rejected both arguments and denied relief and the Court of Appeals affirmed. *Held*: The post-conviction court did not err in holding that counsel's failure to meet the deadline for filing a motion for late appeal did not constitute ineffective assistance of counsel and that petitioner therefore was not entitled to a late appeal; however, it *did* err in holding that petitioner's claims of substantial denials of his constitutional rights at trial were barred in post-conviction because those claims could have been raised in an appeal, when petitioner had not obtained an appeal.

The decision of the Court of Appeals is reversed. The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Ryan T. O'Connor, O'Connor Weber LLC, Portland, argued the cause and filed the briefs for petitioner on review.

Paul L. Smith, Deputy Solicitor General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____
* On appeal from Clackamas County Circuit Court, Susie L. Norby, Judge. 301 Or App 637, 454 P3d 861 (2019).

Before Walters, Chief Justice, and Nakamoto, Flynn, Duncan, Nelson, and Garrett, Justices, and Landau, Senior Judge, Justice pro tempore.**

NELSON, J.

The decision of the Court of Appeals is reversed. The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

** Balmer, J., did not participate in the consideration or decision of this case.

**NELSON, J.**

Petitioner, whose direct appeal from a judgment of conviction was dismissed by the Court of Appeals as untimely filed, argued in a subsequent post-conviction proceeding that appellate counsel was constitutionally inadequate in failing to request leave to file a late notice of appeal within the applicable 90-day window—although counsel had only been appointed four days before that window closed—and that, therefore, petitioner was entitled to a delayed direct appeal. Petitioner argued, alternatively, that, insofar as the Court of Appeals had not acted on his request for appointment of appellate counsel until four days before the 90-day deadline for filing a request for late appeal, it had effectively failed to appoint appellate counsel and, therefore, the ordinary bar on bringing claims in a post-conviction proceeding that could have been raised on direct appeal was inapplicable. *See* ORS 138.550(2) (petitioner for post-conviction relief may assert ground for relief that could reasonably have been asserted in direct appeal if petitioner was unrepresented on appeal due to lack of funds to retain counsel and failure of court to appoint counsel). The post-conviction court rejected both arguments and denied post-conviction relief, and the Court of Appeals affirmed without opinion. On review, we agree with the post-conviction court's determination that appellate counsel was not constitutionally inadequate or ineffective in failing to meet the 90-day deadline in these circumstances. We conclude, however, that the post-conviction court's determination that petitioner was barred from raising what could have been direct appeal claims in post-conviction was based on an incorrect assumption about the applicable statute, and that it erred in declining to consider those claims. Accordingly, we reverse and remand to the post-conviction court to consider and decide defendant's claims of constitutional error by the trial court, without regard to the fact that they could have been raised in an appeal.

## I.   BACKGROUND

We draw the following facts from the records of the proceedings in the trial court and the Court of Appeals. Early in 2016, petitioner was charged in Clackamas County

Circuit Court with criminal driving while suspended, ORS 811.182(4), and was appointed counsel to represent him at trial. However, that first court-appointed lawyer was permitted to withdraw, and a second court-appointed lawyer eventually moved to withdraw due to an irreparable breakdown in communications. While considering the second lawyer's motion, the trial court asked petitioner if he wished to hire a lawyer on his own or to represent himself at trial. After receiving a somewhat confusing response from petitioner,[1] the court allowed the second lawyer to withdraw and told petitioner to appear for trial on August 10, 2016.

Petitioner appeared for trial on the date scheduled but told the court that he was unprepared, that he did not accept the court's jurisdiction, that his "authorized representative" was not present, that he suffered from post-traumatic stress disorder and was "in no shape or capacity to enter into a trial," and that he was not asking for a jury trial and did not "wish to participate in a jury trial." The trial court found that petitioner had waived his right to a jury trial and proceeded to a bench trial. At that trial, petitioner did not present an opening or closing argument, did not cross-examine the state's sole witness, and did not present any evidence of his own. In the end, the court found petitioner guilty as charged and imposed a jail sentence. After announcing the conviction and sentence, the trial court advised petitioner that, if he wished to appeal, he would have to file a written notice of appeal "within 30 days of today's date." The court also advised petitioner in general terms that he could apply for court-appointed counsel to assist with an appeal. Petitioner refused to sign a form acknowledging that he had been advised of and understood his appeal rights. The trial court entered the judgment of conviction and sentence, along with the unsigned appeal rights form, on August 10, 2016.

---

[1] Petitioner asked the trial court if there was a requirement that he hire a lawyer. The trial court responded that he could proceed without a lawyer if he wished. After petitioner suggested that he would handle the matter on his own, the trial court asked specifically whether he would like to waive his right to an attorney. Petitioner responded, "I reserve all my rights without prejudice, waiving none"—a phrase that he had repeated a number of times in the course of the proceeding. There was no conversation at the time about the risks involved in self-representation.

On September 21, 2016, the Court of Appeals received a document that it later deemed to be petitioner's notice of appeal in the matter.[2] That date was outside the 30-day filing window provided by statute. ORS 138.071(1) ("Except as provided in this section, a notice of appeal must be served and filed not later than 30 days after the judgment or order appealed from was entered in the register."). That notice of appeal, which petitioner had filed without representation, consisted of petitioner's handwritten additions to a blank form copied from the Oregon Rules of Appellate Procedure. On the notice itself, petitioner had written "Not an attorney, not pro se; not representing myself," and on an attached certificate of filing, he had written "I wish the Public Defense Service Commission usually the Legal Services Division of the Office of Public Defense Services to perform all the technical legal work for me." At some point, the Court of Appeals recognized the latter notation as a written request for court-appointed counsel and deemed it to have been filed on September 21, 2016.

The Court of Appeals took no action with respect to the notice of appeal and request for court-appointed counsel for six weeks after the September 21, 2016, filing date. Most notably, the court did not appoint counsel. Neither did it send petitioner a letter acknowledging receipt of the notice of appeal and setting out deficiencies and deadlines for curing those deficiencies, as it generally does when it receives a notice of appeal. Finally, on November 4, 2016 (a Friday), the court issued an order acknowledging that petitioner had moved for appointment of counsel to represent him in his appeal and appointing the Chief Defender at the Office of Public Defense Services, Ernest Lannet, for that

---

[2] The document that the Court of Appeals entered in the record as petitioner's notice of appeal was received by the court on October 4, 2016. It contained a handwritten notation: "Initially mailed copy of Judgment with Notice of Appeal mailed 8th of August 2016 by witness from CCJ." The notation seemingly referred to a document that the Court of Appeals had received on September 21, 2016. The document was a copy of the judgment the trial court had issued on August 10, 2016, to which petitioner had added various handwritten comments and notations, including a heading: "Notice: For purpose of your appeal anyhow." Other notations on the document suggest that it had been produced on September 8, 2016. Apparently based on its receipt of that document, the Court of Appeals deemed petitioner's notice of appeal and motion for appointment of counsel as having been filed on September 21, 2016.

purpose. Four days later, on November 8, 2016, the court sent Mr. Lannet an acknowledgment and notice of deficiency that stated that petitioner's Notice of Appeal had been filed on September 21, 2016, that it was deficient in that (among other things) it did not include certificates of service on necessary recipients, ORAP 2.05(10), that those deficiencies must be corrected within 14 days, that the notice of appeal was not timely filed, and that a motion to file a late appeal as provided in ORS 138.071(5)[3] must be filed within 90 days of the entry of the judgment. As noted above, the judgment was entered on August 10, 2016. Ninety days from that August 10, 2016, date was November 8, 2016—the same day that the court issued the notice of deficiency and four days (two business days) after it issued its order appointing Mr. Lannet to represent petitioner in his appeal.

On November 22, 2016, the Court of Appeals received three documents from the Office of Public Defense Services lawyer to whom Mr. Lannet had delegated petitioner's appeal: (1) a notice that the lawyer would be representing petitioner in the appeal; (2) a corrected notice of appeal that resolved the deficiencies identified in the Court of Appeals' November 8, 2016, deficiency notice, including the failure to serve the required recipients; and (3) a motion for a late appeal asserting that petitioner was not personally responsible for the failure to file the notice within 30 days of the entry of judgment, that he had filed a *pro se* notice of appeal before requesting appointment of counsel, and

---

[3] ORS 138.071(5) provides, in part:

"(a) Upon motion of a defendant, the Court of Appeals shall grant the defendant leave to file a notice of appeal after the time limits described in subsections (1) to (4) of this section if:

"(A) The defendant, by clear and convincing evidence, shows that the failure to file a timely notice of appeal is not attributable to the defendant personally; and

"(B) The defendant shows a colorable claim of error in the proceeding from which the appeal is taken.

"* * * * *

"(c) The request for leave to file a notice of appeal after the time limits prescribed in subsections (1) to (3) of this section must be filed no later than 90 days after entry of the order or judgment being appealed. *** A request for leave under this subsection must be accompanied by the notice of appeal, may be filed by mail and is deemed filed on the date of mailing if the request is mailed as provided in ORS 19.260."

that he sought leave to file a late notice of appeal to correct defects in the original notice. On December 6, 2016, the Court of Appeals issued an order acknowledging and granting the motion for late appeal.

However, a few weeks later, the court withdrew that order and issued a new order dismissing petitioner's appeal as untimely. In the order of dismissal, the court explained that (1) the motion for late appeal failed to make a showing of a colorable claim of error in the proceeding from which the appeal was taken, as required by ORS 138.071 (5)(a)(B); (2) the motion was not filed within the 90-day time period provided in ORS 138.071(5)(c); (3) petitioner's failure to serve the notice of appeal on the county district attorney was not corrected within that 90-day time period; and (4) because filing of the motion and notice and service on the district attorney within the 90-day window were jurisdictional requirements, the appeal must be dismissed. While the Court of Appeals thus dismissed petitioner's appeal as untimely filed, it expressly stated in its order of dismissal that it was doing so "without prejudice to petitioner seeking post-conviction relief."

Petitioner thereafter filed the present petition for post-conviction relief, alleging three claims, all of which were claims of a "substantial denial" of petitioners constitutional rights at trial or on appeal and, thus, were within the category of claims for which relief may be granted in post-conviction, ORS 138.530(1)(a).[4] In the first claim, petitioner alleged that he had not knowingly, intelligently, and voluntarily waived his right to trial counsel and that,

---

[4] Under ORS 138.530(1), post-conviction relief is available only for certain kinds of claims:

"(a) A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.

"(b) Lack of jurisdiction of the court to impose the judgment rendered upon petitioner's conviction.

"(c) Sentence in excess of, or otherwise not in accordance with, the sentence authorized by law for the crime of which petitioner was convicted; or unconstitutionality of such sentence.

"(d) Unconstitutionality of the statute making criminal the acts for which petitioner was convicted."

in the absence of such a waiver, granting counsel's motion to withdraw and allowing petitioner to proceed without counsel—as the trial court had done—violated defendant's Due Process rights under the Fourteenth Amendment to the United States Constitution and his right to counsel under the Sixth Amendment and Article I, section 11, of the Oregon Constitution. In his second claim of error, petitioner alleged that he had not waived his right to a jury trial in writing and that, by proceeding to a bench trial without such a written waiver, the trial court violated his right to a jury trial under the Sixth and Fourteenth Amendment and Article I, section 11. Petitioner additionally alleged, with respect to each of the foregoing claims of constitutional error, that the claim could not reasonably have been raised at trial or on direct appeal, given that petitioner had been denied assistance of counsel at trial and adequate assistance of counsel on appeal and that the Court of Appeals' belated appointment of appellate counsel left counsel with insufficient time to meet the late appeal requirements of ORS 138.071(5).

In his third claim for post-conviction relief, petitioner alleged that, regardless of the fact that appellate counsel was appointed only four days before the 90-day deadline in ORS 138.071(5)(c) for filing a late notice of appeal, counsel was constitutionally ineffective and inadequate in failing to meet that deadline. And, petitioner added, there was a substantial probability that that ineffective performance resulted in prejudice to petitioner, given that the trial court had substantially erred in the ways alleged in petitioner's first and second post-conviction claims and that petitioner likely would have prevailed on those issues on direct appeal if counsel's ineffective performance had not resulted in dismissal of the appeal. Petitioner asserted, finally, that, given that counsel's ineffectiveness had resulted in the dismissal of his appeal, the post-conviction court could and should grant him a delayed direct appeal as a remedy.[5]

---

[5] In *Shipman v. Gladden*, 253 Or 192, 203-04, 453 P2d 921 (1969), this court held that a delayed appeal was an appropriate remedy when a criminal defendant's right to appeal was lost through counsel's culpable negligence, and that a post-conviction court was authorized under ORS 138.520 to grant that remedy. A delayed direct appeal would allow review of any and all trial court errors that petitioner wished to assert.

The post-conviction court rejected all three claims and declined to grant the relief that petitioner had requested—either a delayed direct appeal, based on a determination that appellate counsel's performance had been inadequate, or reversal or vacation of the trial court's judgment and remand to that court for retrial, based on a determination that there had been a substantial denial of petitioner's constitutional rights at trial. With respect to the third claim, alleging inadequate assistance of appellate counsel, the court explained:

"I cannot find that a failure by appellate counsel to correct a jurisdictional filing error in a notice of appeal within four days, *** two of which *** were weekend days, *** falls below an objective standard of reasonableness in representation."

As to the first and second claims, the post-conviction court concluded that they could reasonably have been raised on direct appeal and, therefore, under ORS 138.550(2), were barred in post-conviction. The court rejected petitioner's argument that the claims fell within an exception to that bar, which applies to post-conviction petitioners who were "not represented by counsel in the direct appellate review proceeding, due to lack of funds to retain such counsel and the failure of the court to appoint counsel for that proceeding." ORS 138.550(2). While petitioner had argued that, as a practical matter, he was not represented by counsel for purposes of requesting a late appeal, due to the Court of Appeals' failure to appoint counsel at a point that would allow counsel sufficient time to assist in that task, the post-conviction court focused on the literal terms of the statute and concluded that only a complete failure to appoint counsel—which had not occurred in petitioner's case—would trigger the exception.

Petitioner appealed the post-conviction court's ruling and the Court of Appeals affirmed without opinion. Petitioner sought review by this court, and we allowed his petition to consider the two potential paths to relief that petitioner has proposed: (1) a determination that appellate counsel's ineffective performance had resulted in the loss of petitioner's appeal (as petitioner had alleged in his third

post-conviction claim) and a remand to the Court of Appeals with instructions to grant petitioner a delayed direct appeal as a remedy for that loss; and (2) vacation or reversal of petitioner's conviction and remand for retrial based on a determination that, at trial, there had been a substantial denial of petitioner's constitutional rights (in one or both of the ways that petitioner had alleged in his first and second post-conviction claims).

## II.  INADEQUATE ASSISTANCE OF APPELLATE COUNSEL

### A.  *Petitioner's Inadequate Assistance Theory*

Petitioner first contends that the post-conviction court erred in rejecting his claim of constitutionally inadequate assistance of appellate counsel. That claim relies on the right to appellate counsel as guaranteed in Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution,[6] and on the fact that those rights have been interpreted to include a right to *adequate and effective* appellate counsel. *Guinn v. Cupp*, 304 Or 488, 496, 747 P2d 984 (1987); *Evitts v. Lucey*, 469 US 387, 396-97, 105 S Ct 830, 83 L Ed 2d 821 (1985). In general, to prevail on a claim of ineffective assistance of counsel under either constitutional guarantee, a defendant must show that (1) counsel's performance fell

---

[6] The Sixth Amendment guarantees assistance of counsel "in all criminal prosecutions," *i.e.*, at the *trial* level. The Due Process and Equal Protection clauses of the Fourteenth Amendment have been deemed to provide a similar guarantee of assistance of counsel in any criminal *appeal* that is provided as of right. *Douglas v. California*, 372 US 353, 355-58, 83 S Ct 814, 9 L Ed 2d 811 (1963).

In many ineffective assistance cases under the United States Constitution, counsel's performance with respect to the particular task of filing a notice of appeal is treated as a Sixth Amendment issue—on the theory that, after a conviction, determining a defendant's wishes and initiating any desired appeal is part of the assistance of *trial* counsel that the Sixth Amendment guarantees. Of course, that theory is not applicable when, as here, the defendant was not represented by counsel at trial. Instead, the Fourteenth Amendment applies. But whether it is based on the Sixth Amendment or the Fourteenth Amendment, the constitutional duty to provide effective assistance of counsel on appeal is the same, and the judicial holdings under the Sixth Amendment are also applicable to right to counsel issues under the Fourteenth Amendment. *Evitts v. Lucey*, 469 US 387, 396-97, 105 S Ct 830, 83 L Ed 2d 821 (1985) (Fourteenth Amendment right is a right to *effective* assistance of counsel on appeal to the same extent that the Sixth Amendment right is a right to effective assistance of counsel at trial).

below an objective standard of reasonableness, *i.e.*, he or she failed to exercise reasonable professional skill and judgment; and (2) counsel's deficient performance was prejudicial to the defense. *Garza v. Idaho*, ___ US ___, ___, 139 S Ct 738, 744, 203 L Ed 2d 77 (2019) (Sixth Amendment); *Farmer v. Premo*, 363 Or 679, 690, 427 P3d 170 (2018) (Article I, section 11). Prejudice in the inadequate-assistance-of-counsel context means showing that counsel's deficient performance had some tendency to affect the result. *Krummacher v. Gierloff*, 290 Or 867, 883, 627 P2d 458 (1981). If a petitioner establishes a denial of his or her right to adequate and effective counsel in accordance with the foregoing standard, the post-conviction court may order a new trial or "such other relief as may be proper and just." ORS 138.520.

Here, petitioner's claim is that court-appointed appellate counsel was constitutionally inadequate and ineffective in failing to meet the 90-day deadline for requesting leave to file late appeal, which resulted in the dismissal of his direct appeal. With respect to the application of the prejudice prong of the ineffective assistance analysis to that claim, petitioner relies heavily on an idea that has been discussed and applied only in the context of the federal right to counsel—that a lawyer's ineffectiveness may be *presumed* to be prejudicial if it results in his or her client being deprived of an appeal. *Garza*, ___ US at ___, 139 S Ct at 746-48. Petitioner asks this court to read that same presumption of prejudice into the right-to-counsel guarantee of Article I, section 11.

We begin by setting out defendant's entire inadequate assistance of counsel argument, including the parts that rely on Sixth Amendment cases that have no counterparts under Article I, section 11. Petitioner first asserts that, as a matter of both statutory and constitutional law, he had a right to appointed counsel to assist him in obtaining a late appeal. The statutory provisions on which petitioner relies are ORS 138.500(1), which provides that if a criminal defendant makes a written request for appellate counsel to the trial court whose judgment he or she wishes to appeal and the court has previously determined that the defendant is financially eligible, the trial court "shall" appoint counsel, and ORS 138.500(2)(b), which provides that the Court of

Appeals has concurrent authority to appoint counsel—and presumably is under a similar imperative—once a notice of appeal has been filed. Applying those statutory provisions to the circumstances of his own appeal, petitioner argues that the Court of Appeals was obligated to appoint counsel to assist him once it received his September 21, 2016, Notice of Appeal with its handwritten request for appointed counsel—since it would have been able to ascertain from the trial court's earlier appointment of counsel that petitioner was financially eligible for court-appointed appellate counsel. Petitioner also contends that, as a matter of constitutional law, it was incumbent on the Court of Appeals to appoint counsel to assist petitioner in the complicated process of requesting a late appeal, once it received his September 21, 2016, Notice of Appeal, a document that would have conveyed to the court that petitioner wished to appeal and was indigent. Petitioner relies on two cases decided under the Fourteenth Amendment, *Swenson v. Bosler*, 386 US 258, 87 S Ct 996, 18 L Ed 2d 33 (1987), and *Halbert v. Michigan*, 545 US 605, 125 S Ct 2582, 162 L Ed 2d 552 (2005).[7]

Next, petitioner reminds us that a right to the assistance of counsel in requesting a late appeal and filing a late notice of appeal would include a right to *effective* assistance of counsel at that stage. He insists that, in his case, the right to effective counsel was violated when appointed counsel failed to file a request for a late appeal and a corrected notice of appeal before the statutory 90-day deadline, resulting in

---

[7] In *Swenson*, the United States Supreme Court rejected an argument by the State of Missouri that a convicted defendant whose indigency and desire to appeal were manifest had waived his Fourteenth Amendment right to appointment of appellate counsel by failing to specifically request such appointment. 386 US at 260. In *Halbert*, the Supreme Court invalidated a Michigan procedure that required persons who sought to appeal a conviction that resulted from a guilty plea to first seek leave to appeal from the appeals court, but left it to the court's discretion, in any given case, whether to grant a request for appointment of counsel to assist in seeking such leave. The *Halbert* Court held that, given the difficulty of navigating the procedure for seeking leave to appeal without counsel, allowing courts to decline to appoint counsel to assist with the procedure put indigent defendants at a disadvantage in obtaining first-tier review of trial errors, thereby violating the Fourteenth Amendment. 545 US at 619-24. Petitioner suggests that requirements for obtaining a late appeal are similarly difficult to navigate without counsel and that, in consequence, the Court of Appeals was obligated to appoint counsel to assist in that process once petitioner's indigency and desire to appeal became evident—through petitioner's September 21, 2016, filing.

the loss of his appeal. Petitioner observes, first, that when counsel is directly tasked with appealing his or her client's criminal conviction and fails to timely file a notice of appeal, counsel's performance is ineffective as a matter of law.[8] Petitioner then contends that, at least under the Sixth and Fourteenth Amendments, a showing of that kind of ineffectiveness, *i.e.*, failure to file an appeal that the client wishes, is sufficient *in itself* to establish a violation of the constitutional right to assistance of counsel, without any additional showing that an appeal would likely have succeeded and that counsel's ineffective performance therefore was prejudicial to the client's defense.[9] And, while acknowledging that this court has not expressly adopted a similar presumption of prejudice in the ineffective-assistance-of-counsel context under Article I, section 11, petitioner notes that this court *has* stated, with respect to trial and appellate error in general, that the showing that is needed to satisfy the prejudice requirement will vary depending on the nature of the error. *Ryan v. Palmateer*, 338 Or 278, 297, 108 P3d 1127, *cert den*, 546 US 874 (2005). Petitioner suggests that, under that general rule, when counsel's ineffective performance deprives the defendant of an appeal, the loss of the appeal is sufficiently prejudicial, in and of itself, that there should be no requirement of an additional showing that the ineffectiveness had a tendency to affect the ultimate outcome.

Perhaps recognizing that the circumstances surrounding counsel's failure to timely file a late appeal in his case are not directly comparable to those in the various cases that he has cited in support of his theories, petitioner turns to an argument that more specifically addresses why *his* appointed counsel should be deemed to have provided

---

[8] Petitioner relies on cases decided under the Sixth and Fourteenth Amendment—*Shipman*, 253 Or 192; *Welch v. Gladden*, 253 Or 228, 453 P2d 907 (1969); and *Garza*, ___ US ___, 139 S Ct 738—in which *trial* counsel failed to file a timely appeal for a client who had been convicted and sentenced. In all three of those cases, the essential takeaway is the same: Counsel's performance is ineffective and deficient if he or she fails to timely file a notice of appeal after the client has requested that he or she do so—regardless of counsel's own assessment of the potential merits of such an appeal.

[9] That, of course, is an exception to the usual rule, cited above, 368 Or at 247-48, that to prevail on a claim of ineffective assistance of counsel, a defendant must show not only that counsel's performance was objectively ineffective *but also* that the performance was prejudicial to the defense.

constitutionally ineffective assistance that resulted in the loss of his appeal. Petitioner begins by noting that, under ORS 138.071(5)(a) and (c) (set out above, 368 Or at 243 n 3), a criminal defendant who has missed the 30-day deadline for filing a notice of appeal can salvage his or her appeal by filing a motion for leave to file a late appeal, accompanied by a notice of appeal, not later than the 90th day after the entry of the judgment of conviction. Recalling the standard for ineffective assistance set out in the Sixth Amendment and Article I, section 11, cases, *see* 368 Or at 247-48, petitioner contends that appointed counsel who was "exercis[ing] reasonable professional skill and judgment" would have filed the required motion for leave and notice of appeal within the 90-day time frame—even if, due to the delayed appointment, he or she had only four days in which to do so. Petitioner asserts that appointed counsel would not need to have first consulted with petitioner to determine that petitioner wished to proceed with those filings: It would have been apparent from the fact that petitioner had filed a *pro se* notice of appeal that he wanted to appeal and therefore would want counsel to do what was necessary to preserve his ability to do so. Petitioner insists, too, that the short time frame for filing the required motion and notice of appeal would not excuse a failure to timely file them: Counsel was obligated to file a motion based on whatever information was available to him, even if he did not think that the motion would satisfy the requirements for obtaining a late appeal.

Petitioner contends that, in any event, there was enough information that was immediately available to counsel to file a motion that did satisfy the requirements of ORS 138.071(5)(a). In that regard, petitioner suggests that the production of a notice of appeal to submit with the motion is a purely "ministerial task," *i.e.*, one that requires no strategic or analytic thought, which a reasonably competent lawyer can accomplish quickly.[10] And while he acknowledges that producing the motion itself is *not* entirely ministerial,

---

[10] At its most basic, a notice of appeal requires a title, the heading "Notice of Appeal," identification of the judgment from which the appeal is taken (naming the trial judge, court and county), identification of the adverse party or parties, proof of service, a certificate of filing, and a copy of the judgment. ORAP 2.05.

petitioner contends that, upon receiving the Court of Appeals' order appointing him as appellate counsel in a case identified by title and case number, counsel exercising reasonable professional skill and judgment could have and would have immediately accessed sufficient information to support a motion for leave to file a late appeal.

In that regard, petitioner observes that a motion for leave to file a late notice of appeal must include (in addition to the late notice of appeal): (1) a showing, by clear and convincing evidence, that the failure to file a timely notice of appeal "[wa]s not attributable to the defendant personally"; and (2) a showing of a "colorable claim of error in the proceeding from which the appeal is taken." ORS 138.071(5)(a)(A) and (B). To make the first showing, petitioner suggests, competent counsel would have examined the appellate case file and noticed the handwritten notation on petitioner's *pro se* notice of appeal: "Initially mailed copy of Judgment with Notice of Appeal mailed 8th of August 2016 by witness from CCJ." Competent counsel, petitioner contends, would have called attention to that notation in the motion for leave, arguing that it showed that petitioner had *timely mailed* a *pro se* notice of appeal which had not been received by the Court of Appeals until after the 30-day filing period had elapsed, and that the failure to file a timely notice of appeal therefore "was not attributable to petitioner personally." ORS 138.071(5)(a). To make the second showing, petitioner argues, competent counsel would have examined the trial court case register, which purports to show all filings, proceedings and actions taken in the case, and would have discovered that petitioner was convicted in a bench trial but had not waived his right to a jury trial in writing. Based on that discovery, petitioner continues, competent counsel would have argued in the motion that the trial court had committed reversible error under Article I, section 11, when it tried petitioner's case from the bench without obtaining a written waiver—a clear, not merely colorable, error. *See State v. Barber*, 343 Or 525, 530, 173 P3d 827 (2007) (trying criminal defendant from the bench without first obtaining written jury trial waiver is plain, reversible error under Article I, section 11). Finally, petitioner asserts, counsel could not reasonably decline to submit such a motion out of

concern that it would not meet the statutory requirements: The decision to appeal was petitioner's, and counsel was obligated to offer any plausible arguments, based on the information that was available, to assist in obtaining the desired appeal. *Cf. Garza*, ___ US at ___ n 8, 139 S Ct at 746 n 8 (defendant's appellate rights should not hinge on appointed counsel's opinion that there is no merit to the appeal).

In short, petitioner argues, competent counsel could have, and would have, filed a motion for leave to file a late appeal and a notice of appeal by the 90th day after the judgment of conviction was entered, in order to prevent the loss of an appeal that petitioner evidently desired. In failing to do so until after the 90-day deadline had passed, petitioner concludes, appointed appellate counsel effectively overrode petitioner's desire to appeal, providing the kind of ineffective assistance that, under the Sixth Amendment, is presumed to be prejudicial. *See Roe v. Flores-Ortega*, 528 US 470, 484, 120 S Ct 1029, 145 L Ed 2d 985 (2000) (when lawyer's deficient performance deprives client of an appeal that client desires, courts presume prejudice with no further showing of the merits of the underlying claims); *Garza*, ___ US at ___, 139 S Ct at 747 (same). And, even if prejudice is *not* presumed in these circumstances under Article I, section 11, petitioner insists that he was demonstrably prejudiced in the required sense because, had a motion been timely filed based on the information that was immediately available to counsel when he was appointed (as discussed above), the Court of Appeals would have deemed it sufficient to satisfy the requirements of ORS 138.071(5)(a) and would have granted petitioner a late appeal.

## B.   *The State's Response*

The state challenges petitioner's theory on a number of different fronts. First, it rejects petitioner's contention that appellate counsel was constitutionally ineffective in failing to meet the 90-day deadline for filing a motion for a late appeal and accompanying notice of appeal under ORS 138.071(5)(a) and (c). The state notes that, by the time that he was appointed to represent petitioner in his appeal, counsel would have had to produce and file the motion and

notice within two business days to meet that deadline—a task that counsel could not reasonably have been expected to perform, given the nature of the required motion and the limited information that counsel could have accessed in that time period. The state further contends that, even assuming that appellate counsel *was* ineffective in failing to timely file the motion for delayed appeal and accompanying notice, petitioner has not shown (and, more to the point, did not show in the post-conviction proceeding) that he was prejudiced by that ineffectiveness. To prove prejudice, the state argues, petitioner would have had to show that the Court of Appeals would have granted a motion for a late appeal if counsel had timely filed one. But, the state explains, petitioner could not make that showing because he could not show that the failure to timely file a notice of appeal was not attributable to him personally, a required element of a motion for leave to file a late appeal under ORS 138.071 (5)(a): The record before the post-conviction court showed only that the trial court had advised petitioner that he had 30 days after the judgment of conviction to file a notice of appeal and that petitioner had not filed his *pro se* notice of appeal until after the 30-day deadline had passed. Although petitioner has suggested that an inference of timely mailing of a notice of appeal can be drawn from the notation on petitioner's *pro se* notice of appeal to the effect that a copy of the judgment and notice of appeal had been "mailed on [the] 8th of August, 2016 by witness from CCJ," and that that inference would support a further inference that the failure to timely file a notice of appeal was not petitioner's fault, the state contends that that chain of inferences is nonsensical, if for no other reason than that the stated date of mailing was two days before petitioner was tried and convicted. Finally, the state rejects petitioner's assertion that, in these circumstances, he need not establish prejudice from counsel's ineffective performance at all. The state argues that the Sixth Amendment cases that petitioner cites for that proposition are inapplicable—they pertain when a lawyer disregards his or her client's express desire to appeal and fails to perform the purely ministerial task of filing a notice of appeal, and do *not* pertain when, as here, the lawyer's supposedly ineffective performance is a failure to employ the extraordinary statutory remedy of moving for leave to file a late appeal.

C.  *Analysis*

As it turns out, we need not consider the parties' arguments that relate to the prejudice prong of the ineffective assistance of counsel analysis, because it is clear that petitioner's claim falls short on the failure-to-exercise-reasonable-professional-skill-and-judgment prong. We agree with the state that, given the extreme lateness of counsel's appointment and the limited information that was immediately available, counsel's failure to timely file a motion and accompanying notice of appeal under ORS 138.071(5)(a) and (c) did not fall below an objectively reasonable standard for legal representation.

To conclude that appointed counsel performed ineffectively here, we would have to find that reasonable and competent counsel, faced with these same circumstances, would have *timely* filed a notice of appeal and motion for leave to file a late appeal, the latter of which included showings that the failure to meet the 30-day deadline for filing a notice of appeal "was not attributable to defendant personally" and that petitioner had at least one colorable claim of error to raise in an appeal. ORS 138.071(5)(a). We cannot so find.

When counsel was appointed, petitioner already had missed the deadline for filing a notice of appeal. The only way to salvage his appeal was by filing a motion for leave to file a late notice appeal (and accompanying notice of appeal) under ORS 138.071(5)(a) and (c). The Court of Appeals issued its order appointing counsel only four days—two business days—before the deadline for filing such a motion. Because the order appointing counsel did not notify counsel that petitioner's notice of appeal had been untimely filed, counsel would have had to discover for himself that a motion for leave to file a late appeal and accompanying notice of appeal were needed to prevent the loss of the appeal and that the deadline for filing those documents was imminent.[11]

The only sources of information about petitioner's case that would have been immediately available to appointed

---

[11] As noted above, a deficiency notice alerting counsel to those issues was not sent to appointed counsel until November 8, 2016, the day that a motion for leave to file a late appeal would have been due.

counsel were the appellate case file and the circuit court case register. Through an examination of those sources, competent counsel *perhaps* would have determined at some point in the two business days left that the judgment of conviction that petitioner sought to appeal was entered on August 10, 2016, that no notice of appeal had been filed within 30 days of that date, and that, to preserve petitioner's ability to bring his appeal, counsel would have to immediately file a motion for leave to file a late appeal that met the requirements set out in ORS 138.071(5)(a). But nothing in the immediately available sources would have explained to counsel why, and under what circumstances, petitioner's notice of appeal had been filed late.[12] In the absence of readily available information speaking to those issues, counsel—no matter how competent—would not have had any basis for asserting that the failure to timely file the notice "was not attributable to defendant personally," much less "clear and convincing evidence" that would have supported such an assertion.[13]

Neither can we say that competent counsel would have been able to assert a colorable claim of error in a motion for leave to file a late appeal within the timeframe that was left to file that motion. Identifying trial error generally involves interviewing the defendant and examining the trial court file and trial transcript examination of the entire trial court file and the trial transcript—sources of information that almost certainly would not have been available to defendant's court-appointed counsel lawyer before the 90-day late appeal period had expired. While we now know

---

[12] Further investigation might have provided information that was relevant and helpful, and competent counsel would have investigated further, time allowing. But we must consider the reasonableness of counsel's performance in the specific circumstances that he faced, and we cannot say that reasonable counsel necessarily would have performed, or would even have been able to perform, such further investigation in two business days.

[13] Petitioner suggests that competent counsel would have offered the handwritten notation on petitioner's *pro se* notice of appeal—"Initially mailed copy of Judgment with Notice of Appeal *** 8th of August 2016"—as supporting an inference that the late filing was not attributable to petitioner because it showed that petitioner had attempted an earlier, timely filing. But even assuming that, within the short time available, competent counsel could have discovered and understood the notation, we cannot find that he or she would have offered it in accordance with petitioner's theory. Given that the notation refers to a date that fell two days before petitioner was convicted, no sensible inference relating to petitioner's personal responsibility for missing the deadline can be drawn from it.

that petitioner *did* have colorable claims of error pertaining to his supposed waiver of his rights to counsel and to a jury trial, those claims of error would not have been evident to competent counsel from the limited information that was immediately available upon counsel's appointment. While petitioner suggests that one of those claims—the claim of a jury right violation—would have been evident from the absence of any mention of a written jury right waiver in the trial court register, we think that that absence is only conspicuous in hindsight. Moreover, a competent lawyer would reasonably have ethical concerns about asserting that there had been no written jury right waiver without confirming that assertion by, for example, checking in the trial court file or discussing the matter with the defendant (or, if relevant, the defendant's trial lawyer)—options that, again, would not have been available to appellate counsel before the 90-day deadline had expired.

Petitioner balks at the notion that, in circumstances like these, appointed counsel might, for ethical reasons, be reluctant to base a motion for a late appeal on factual assertions that he or she could not confirm and arguments that he or she believed to be unreasonable or unresponsive to the statutory requirements. He observes that a court-appointed attorney representing a criminal defendant on direct appeal may not refuse to prosecute an appeal that the defendant desires, even when the attorney believes that there is no reasonable basis for an appeal. *See, e.g.*, *Garza*, ___ US at ___, 139 S Ct at 746 (when a defendant has expressly requested an appeal, counsel performs deficiently by disregarding that request, even if counsel believes that an appeal would be "problematic" because defendant had waived his right to appeal); *see also State v. Balfour*, 311 Or 434, 814 P2d 1069 (1991) (counsel who finds no nonfrivolous basis for appeal has no ethical duty to withdraw; he or she must file a notice of appeal, must review the record and discuss case with defendant and trial counsel, and must file brief raising any claims that defendant wishes to raise in section that defendant signs); *Anders v. California*, 386 US 738, 87 S Ct 1396, 18 L Ed 2d 493 (1967) (defendant's rights to due process and equal protection were violated when appellate counsel simply informed court that he could find no meritorious issues

for appeal, forcing defendant to shift for himself). Petitioner argues that, in a similar vein, appointed counsel is obligated to move for leave to file a late appeal that his or her client desires, even when he or she is unable to find an adequate factual and legal basis for such a motion. Recognizing that obligation, he adds, "accommodates court-appointed counsel's obligation to prosecute the appeal at the request of the defendant and * * * permits the Court of Appeals to make the determination of whether the appeal may proceed based on the information available to counsel within the jurisdictional time limit."

Petitioner's invocation of the holdings in *Garza*, *Balfour*, and *Anders* is inapt. While, in *Garza*, the Supreme Court held that counsel who disregards the defendant's instruction to file a notice of appeal is professionally unreasonable, it did so on the ground that filing such notice is a "purely ministerial task." ___ US at ___, 139 S Ct at 746. Thus, filing such notice would not require counsel to confirm the accuracy or reasonableness of any substantive claims or assertions. And, while *Balfour* and *Anders* both provide specific instructions about how court-appointed counsel can meet their professional obligations to their clients when, after researching and considering the case, they affirmatively find that there are no meritorious issues for appeal, those cases have nothing to say about cases in which appellate counsel simply has no time to determine whether there is any factual and legal basis for making a required argument or assertion.

We conclude that petitioner failed to satisfy the first requirement for an ineffective assistance of counsel claim under the theory that he offered:[14] He has not shown that appellate counsel's failure to timely file a motion for leave to file a late notice of appeal (with an accompanying notice

---

[14] Petitioner has argued only that he was denied constitutionally adequate counsel on appeal because the lawyer who was appointed to represent him on appeal actually performed ineffectively. He has not argued that, and therefore we do not consider whether, the Court of Appeals' delayed appointment of appellate counsel in itself constituted a denial of constitutionally adequate counsel. *See, e.g.*, *Powell v. Alabama*, 287 US 45, 56-59, 53 S Ct 55, 77 L Ed 158 (1932) (when trial court appointed "all members of the bar" to represent defendants in capital case only six days before trial, and one out-of-state lawyer responded but was denied more time to prepare, appointment was so indefinite and so close upon trial as to amount to a denial of effective assistance of counsel, without examination of counsel's actual performance at trial).

of appeal) constituted a failure to exercise reasonable professional skill and judgment. And because petitioner has failed to satisfy that first requirement, we need not consider whether he has satisfied—or needs to satisfy—the second (prejudice) requirement in order to hold that he failed to prove his claim that he was denied constitutionally effective assistance of counsel on appeal. The post-conviction court did not err in rejecting that claim, and as a result, petitioner was not entitled to a delayed direct appeal.

### III.   AVAILABIITY OF RELIEF UNDER ORS 138.550(2)

Petitioner next challenges the post-conviction court's refusal to grant post-conviction relief on his two claims of constitutional error by the trial court, on the ground that those claims were barred in post-conviction under ORS 138.550(2). Petitioner contends that, even if the claimed errors were ones that, in ordinary circumstances, would have been barred in post-conviction under ORS 138.550(2) because they could have been raised in a direct appeal, in this case, they fell within the scope of an exception to the bar, also in ORS 138.550(2), for claims brought by post-conviction petitioners who were "not represented by counsel in the direct appellate review proceeding, due to lack of funds to retain such counsel and the failure of the court to appoint counsel." The post-conviction court concluded that the exception did not apply, rejecting petitioner's theory that, in this case, the Court of Appeals' delay in appointed counsel was a "failure *** to appoint counsel" within the meaning of the provision. The court felt constrained to read the words of the statutory exception literally, simply noting that the Court of Appeals *had* appointed counsel.

Before this court, petitioner reiterates his contention that, because he was unrepresented on appeal due to what was effectively the Court of Appeals' failure to appoint counsel, his two claims of constitutional error by the trial court are excepted from the bar on raising claims in post-conviction that could have been raised on appeal,[15] ORS 138.550(2), while the state insists that the exception does

---

[15] Petitioner appears to acknowledge that, in ideal circumstances, his claims of trial court error could have been raised in a direct appeal.

not apply because petitioner's lack of appellate counsel was not "due to \*\*\* the failure of [C]ourt [of Appeals] to appoint counsel" but, rather, to petitioner's own lateness in filing a notice of appeal and request for counsel. Both parties thus focus on the meaning and scope of the exception set out in the second sentence of ORS 138.550(2), and appear to assume that the bar itself, set out in the first sentence of the same provision, is applicable even to post-conviction petitioners who, like petitioner here, did not obtain an appeal. That assumption about the scope of the statutory bar is incorrect—and in a way that renders irrelevant the parties' present arguments about the meaning of the *exception* to the bar.

While this court generally will confine itself to the arguments that the parties have actually asserted in a case, we have an independent duty to correctly interpret any statute that comes before us, regardless of the arguments and interpretations offered by the parties. *See Engweiler v. Persson/Dept. of Corrections*, 354 Or 549, 559, 316 P3d 264 (2013) (court has obligation to reach correct interpretation of statutes whether or not the correct interpretation has even been advanced by the parties); *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (this court "is responsible for identifying the correct interpretation, whether or not asserted by the parties"). What that means in the present case is that, in order to decide the ultimate issue—whether, in enacting ORS 138.550(2), the legislature intended to bar post-conviction relief for claims of constitutional error that were not raised in a direct appeal when, at least in part because of the late appointment of appellate counsel, the petitioner's attempt to bring a direct appeal was unsuccessful—we must consider ORS 138.550(2) in its entirety, not just the failure-to-appoint-appellate-counsel exception in the provision's second sentence.

Because any search for the legislature's intent in enacting a statute must begin with the statutory text and its context, *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009), we begin by setting out the text of ORS 138.550(2), in the context of ORS 138.550 as a whole. Before we do so, we note that ORS 138.550 is an original provision of the Post-Conviction Hearing Act, Oregon Laws 1959, chapter

636, which was enacted in 1959 to provide a single post-conviction remedy to replace the multiplicity of procedures that had previously been used to challenge criminal judgments after appeal was no longer available. ORS 138.550 provides, in part:

"The effect of prior judicial proceedings concerning the conviction of petitioner which is challenged in the petition shall be as specified in this section and not otherwise:

"(1)   The failure of petitioner to have sought appellate review of the conviction, or to have raised matters alleged in the petition at the trial of the petitioner, shall not affect the availability of relief under ORS 138.510 to 138.680. But no proceeding under ORS 138.510 to 138.680 shall be pursued while direct appellate review of the conviction of the petitioner, a motion for new trial, or a motion in arrest of judgment remains available.

"(2)   When the petitioner sought and obtained direct appellate review of the conviction and sentence of the petitioner, no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. If petitioner was not represented by counsel in the direct appellate review proceeding, due to lack of funds to retain such counsel and the failure of the court to appoint counsel for that proceeding, any ground for relief under ORS 138.510 to 138.680 which was not specifically decided by the appellate court may be asserted in the first petition for relief under ORS 138.510 to 138.680, unless otherwise provided in this section.

"(3)   All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. However, any prior petition or amended petition which was withdrawn prior to the entry of judgment by leave of the court, as provided in ORS 138.610, shall have no effect on petitioner's right to bring a subsequent petition.

"(4)   Except as otherwise provided in this subsection, no ground for relief under ORS 138.510 to 138.680 claimed

by petitioner may be asserted when such ground has been asserted in any post-conviction proceeding prior to May 26, 1959, and relief was denied by the court, or when such ground could reasonably have been asserted in the prior proceeding. However, if petitioner was not represented by counsel in such prior proceeding, any ground for relief under ORS 138.510 to 138.680 which was not specifically decided in the prior proceedings may be raised in the first petition for relief pursuant to ORS 138.510 to 138.680. ***"

As suggested in the introductory sentence, ORS 138.550 purports to define the preclusive effects that prior judicial proceedings related to the conviction will have on a post-conviction challenge. Subsection (1) speaks to the effect of a *failure* to seek appellate review of a conviction or to raise an issue at trial and provides that such a failure "shall not affect the availability of relief." Subsection (3) speaks to the effect of an initial proceeding under the Post-Conviction Hearing Act and provides, in effect, that any ground for relief not asserted in that initial proceeding is deemed waived for purposes of any subsequent proceeding— unless it could not reasonably have been raised at the time. Subsection (4) speaks to the effect of any post-conviction proceeding that was held prior to the enactment of the Post-Conviction Hearing Act, and bars a person who had previously challenged his or her conviction in such a proceeding from bringing claims that either were decided or could have been decided in *that* proceeding in a post-conviction proceeding under the Act.

Subsection (2), at issue here, speaks to those circumstances in which a post-conviction petitioner previously "sought and obtained" direct appellate review, and directs that, save for the exception set out in the second sentence, no ground for relief that was or could have been raised in "the direct appellate review proceeding" may be asserted in post-conviction. Based solely on the wording of the first sentence of subsection (2), it would appear that the bar that it imposes on issues that could have been raised on appeal applies only if direct appellate review actually was "sought *and* obtained." The second sentence of the subsection, setting out the exception about which the parties are at odds, seems to confirm that the bar is limited to cases in which an

appeal proceeding was had: Insofar as it refers to claims not specifically decided by "*the* appellate court" when the petitioner was not represented in "*the* direct appellate review proceeding," it appears to assume that a direct appeal proceeding has occurred.

But, as noted, the parties here assume that the bar applies more broadly—to post-conviction petitioners who did *not* obtain an appeal. Although the text of ORS 138.550(2) does not appear to support that assumption, we do not rely on text alone to determine the legislature's intentions. We also examine the context surrounding the statutory provision and any helpful legislative history. *Gaines*, 346 Or at 171-72. Here, the extremely sparse legislative history of the Oregon Post-Conviction Hearing Act, of which ORS 138.550(2) is part, does not speak to the meaning of ORS 138.550(2), leaving only context to be considered.

Context includes other parts of the statute in which the provision at issue resides. One such provision is the subsection of ORS 138.550 that immediately precedes subsection (2), ORS 138.550(1), which provides that a post-conviction petitioner's "failure *** to have sought appellate review *** shall not affect the availability of relief under [the Post-Conviction Hearing Act]." That provision, on its face, undermines the notion that the bar set out in subsection (2) applies beyond those cases in which the petitioner had both sought and *obtained* direct appellate review of his or her case. At the very least, it appears to indicate that the bar in subsection (2) would not apply when there had been no attempt to appeal at all. And while subsection (1) does not itself address circumstances like those in the present case—where petitioner sought but *did not obtain* direct appellate review—that is not a reason to assume that such circumstances were meant to fall within the purview of subsection (2).

The introductory paragraph of ORS 138.550—stating that the preclusive effects of prior judicial proceedings relating to a post-conviction petitioner's conviction "shall be as specified in this section and not otherwise"—also qualifies as relevant context. That paragraph suggests that the four subsections of ORS 138.550 set out the

entire universe of applicable rules of preclusion—there are no unwritten additions from, for example, the case law predating the Post-Conviction Hearing Act. That wording would seem to militate against applying the preclusive rule announced in subsection (2) beyond the circumstances that are specified—"[w]hen the petitioner *sought and obtained* direct appellate review of the conviction and sentence of the petitioner."

There is another piece of evidence that supports that understanding. When attempting to discern what the legislature intended by a provision of the Post-Conviction Hearing Act, this court has often turned to the commentary of two individuals who were involved in drafting the Act, published as a law review article: Jack G. Collins and Carl R. Neil, *The Oregon Postconviction-Hearing Act*, 39 Or L Rev 337, 356-57 (1960). *See, e.g., State v. Verduzco*, 357 Or 553, 570, 355 P3d 902 (2015) (noting that court has repeatedly looked to the Collins and Neil article in seeking to understand the 1959 Post-Conviction Hearing Act). In their commentary on section 15 of the Act (Or Laws 1959, ch 636, § 15), now codified at ORS 138.550, Collins and Neil clearly distinguish the preclusion rules that apply under subsections (1) and (2):

> "Under subsection (1) the failure of a defendant to assert error at the trial or a failure to appeal from the conviction does not preclude the assertion of such error in a proceeding under this act. A different rule is provided in subsection (2) when a direct appeal from the conviction was taken by petitioner. Any question actually raised or which could reasonably have been raised on the appeal cannot be litigated in a proceeding under the act."

39 Or L Rev at 356. They then explain that the two subsections "adopt substantially the rules heretofore applied in habeas corpus cases as to the effect of appeal or failure to appeal." *Id*. at 356-57. Noting that some Oregon cases had stated that the habeas remedy is unavailable to challenge a criminal judgment when an appeal could have raised the same claims "but was not taken," Collins and Neil go on to explain that those statements do not reflect what the court actually did when confronted by a habeas claim by a petitioner who had not brought a direct appeal. "[I]nvariably,"

they explained, the court would announce the rule but then go on to decide the case *on the merits. Id.* at 357. And, in cases involving claimed defects "of such magnitude as to render the conviction and imprisonment thereon unconstitutional" that the court deemed meritorious, the court would simply grant habeas relief, omitting any mention of the habeas petitioner's failure to appeal. *Id.* Collins and Neil contrasted those cases with the cases of habeas petitioners who previously *had* appealed:

> "Where the prisoner took an appeal from his conviction and could have raised or actually did raise the claims asserted in the habeas corpus proceeding, the Oregon court has generally refused to decide the merits of the petition. However, this rule has been abandoned on questions of public importance. Subsection (2) would appear to be a justifiable rule for this situation, allowing postconviction attack only when a claim could not reasonably have been raised on the appeal. If a petitioner had a reasonable opportunity to present a question before the highest court of the state, there is no substantial reason why further judicial time should be spent in litigating the question in other state courts."

*Id.* The clear implication of the foregoing explanation is that subsection (2) reflects the court's practice of applying preclusion principles in habeas cases when the petitioner "took an appeal" and subsection (1) reflects the court's entirely different practice—not the rule that it sometimes stated—when an appeal "was not taken."

Later in the commentary on these provisions, Collins and Neil explain how the various subsections of ORS 138.550 work by setting out the following scenario:

> "[S]uppose John Doe is convicted in Oregon of a crime by virtue of the admission at his trial of evidence seized in violation of the Federal Constitution. At the time of his trial, a conviction based upon such evidence does not conflict with the fourteen amendment. Two years after his conviction, the Supreme Court of the United States reverses its position and decides that a conviction based upon such evidence violates rights guaranteed by the fourteenth amendment. Consider the possible results under section 15 of the act if, before the Supreme Court decision, Doe had taken the following steps to set aside his conviction on the identical

ground: (1) no appeal and no postconviction proceeding; (2) appeal, but the conviction was affirmed by the Oregon Supreme Court; * * *

"In the first situation, Doe could obtain relief by bring-ing a postconviction proceeding. His failure to appeal is immaterial under subsection (1) * * *. If he had followed the second course of action, subsection (2) would apparently bar relief when Doe was represented by counsel on appeal."

*Id.* at 358-59. That explanation appears to confirm that the bar in subsection (2) on raising claims in post-conviction proceedings that could have been raised in a direct appeal applies only when a direct appeal actually was obtained.

Thus far, all of the evidence points in the same direc-tion. However, when examining the context surrounding a statutory provision in order to ascertain its meaning, we also consider prior cases that purport to interpret the provi-sion itself or related provisions. *Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996). This court has never considered whether the bar on raising claims in post-conviction that could have been raised on appeal applies beyond the strict terms of ORS 138.550(2), *i.e.*, in circumstances in which the petitioner had not previously obtained direct appellate review. However, the Court of Appeals has long held that, regardless of whether an appeal was actually taken, claims that reasonably could have been asserted in a direct appeal may not be asserted in post-conviction, unless the post-conviction petitioner shows fraud, coercion, or gross negli-gence of counsel. *See Lerch v. Cupp*, 9 Or App 508, 497 P2d 379 (1972) (interpreting ORS 138.550(1) as barring claims that could have been raised in direct appeal when petition did not appeal); *see also Batchelor v. State*, 47 Or App 697, 614 P2d 1236 (1980) (following *Lerch*); *Hunter v. Maass*, 106 Or App 438, 808 P2d 723, *rev den*, 312 Or 80 (1991) (same). Although this court has not endorsed that holding, it appears that many in the legal community have accepted it as settled law. *See, e.g.*, *Criminal Law* § 30.1-3 (OSB CLE 2013 rev) (citing *Lerch* and other Court of Appeals cases for the proposition that petitioner who did not appeal can obtain post-conviction relief for claim that could reasonably have been raised in a direct appeal only if the petitioner alleges facts sufficient to show fraud, coercion or such gross

incompetence of counsel as to amount in law to a denial of the right to counsel).

Because the cited cases were not decided by this court, they ordinarily would not enter into this court's efforts to construe ORS 138.550(2). But, given the apparent wide acceptance of the rule that they stand for and their similar approach, with respect to the meaning ORS 138.550(1), to two cases that *were* decided by this court,[16] we feel compelled to address them—or at least *Lerch*, the lead Court of Appeals case on the issue—in our analysis.

In *Lerch*, a petitioner who had not appealed his conviction sought post-conviction relief for a purported violation of his right to a speedy trial, but the post-conviction court dismissed the petition, accepting the state's theory that the petitioner could not raise claims in post-conviction that he could have raised in a direct appeal, had he chosen to bring one. On appeal of that dismissal, the petitioner pointed out that, under ORS 138.550(1), a failure to seek appellate review "shall not affect the availability of relief" under the Post-Conviction Hearing Act. 9 Or App at 509-11. The Court of Appeals insisted, however, that subsection (1) should not be read literally but must be construed in the light of Act's overall "policy and purpose," *id.* at 511, which, the court concluded, included a policy and purpose of "adopt[ing] substantially the rules heretofore applied in habeas corpus cases," *id.* at 512. The court then cited pre-Act statements by this court to the effect that habeas corpus is not available to those who neglected to appeal, as well as a statement in one of its own cases, *Wheeler v. Cupp*, 3 Or App 1, 8, 470 P2d 957 (1970), that, when a post-conviction petitioner had instructed counsel to dismiss his direct appeal, the post-conviction court could properly sustain the state's demurrer to petitioner's post-conviction claims unless the petitioner had "allege[d] facts sufficient to show fraud, coercion or such gross incompetence of counsel as to amount in law to a denial of the right to counsel[.]" Finally, the court suggested that a literal reading of ORS 138.550(1) would be

---

[16] The two cases are *North v. Cupp*, 254 Or 451, 461 P2d 271 (1969), *cert den*, 397 US 105 (1970), and *Palmer v. State of Oregon*, 318 Or 352, 867 P2d 1368 (1994), which are discussed below, 368 Or at 270-71.

irrational, given that there are strict statutory time limits on bringing a criminal appeal but no time limits on seeking post-conviction relief:[17] "The post-conviction route, which is available without regard to a time limit as a means of raising otherwise appealable issues, if unreasonably extended, would largely supersede the remedy of appeal, thus making useless the statutory time limit for criminal appeals." *Lerch*, 9 Or App at 514. The court ultimately concluded:

> "It is evident that the purpose and policy behind ORS 138.550(1), when construed in light of the Act as a whole, dictates that the statute be read as requiring issues that can be raised on direct appeal to be so raised. This conclusion is further supported by the policy inherent in ORS 138.550(2), which provides that when a defendant does seek and obtain direct appellate review, no ground for post-conviction relief may be asserted
>
> > "'* * * unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. * * *'"

*Id.* at 515 (elipses in original). The court added that a post-conviction petitioner could avoid the bar only by "alleg[ing] facts sufficient to show fraud, coercion or such gross incompetence of counsel as to amount in law to a denial of the right to counsel * * * or that the issue sought to be determined in the post-conviction hearing could not reasonably have been raised had there been an appeal." *Id.* at 515-16. The Court of Appeals thus interpreted ORS 138.550(1) as effectively extending to *that* subsection the bar in subsection (2) on raising claims in post-conviction that reasonably could have been raised on appeal. As noted, the Court of Appeals has reiterated that interpretation in its subsequent cases and this court has never considered whether that interpretation is correct.

      *Lerch* is not binding precedent for this court. Even if it were our own opinion, its precedential value would be questionable, because it failed to apply the proper analytical framework and to adequately analyze the controlling issue. *See Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1

---

[17] Although the original 1959 Post-Conviction Hearing Act, which was at issue in *Lerch*, set no time limits on filing a petition for post-conviction relief, the statute has since been amended and now includes a limitations period. ORS 138.510(3).

(2011) (although court begins with the assumption that issues considered in its prior cases were correctly decided, it will reconsider an earlier case if a party can demonstrate that court did not reach correct result in the case because it was not presented with important argument or failed to apply its usual decisional framework or adequately analyze the controlling issue). The analysis in the opinion is flawed, first, because it gives short shrift to the actual text that it purports to construe, offering no explanation, in terms of the text, of the meaning that it ultimately assigns to ORS 138.550(1). Second, it does not compare that subsection with an obvious counterpart, subsection (2), and thus fails to confront the *express* bar in that subsection to raising claims that could have been raised in a direct appeal, as well as the apparently limited application of that bar to cases in which the petitioner had "sought and obtained" a direct appeal. Instead of considering the text and context of subsection (1), the *Lerch* court drew its conclusion about the meaning of that subsection almost entirely from what it deemed to be the Post-Conviction Hearing Act's overall "policy and purpose." And while the court purported to find, in the Collins and Neil commentary discussed above, a policy and purpose of applying the preclusion principles employed in pre-Act habeas cases to post-conviction proceedings under the Act, it appears to have missed the point of the commentators' discussion of the pre-Act habeas cases—that, despite *statements* in those cases to the effect that "habeas corpus will not lie where an appeal could have raised the same issue but was not taken," this court in most cases *actually decided, on the merits*, the claims of habeas petitioners who had not brought direct appeals. *See* above, 368 Or at 264-65. At the same time, the *Lerch* court ignored the parts of the Collins and Neil commentary that are directly contrary to its conclusion. 368 Or at 264-66. Finally, the court relied heavily on the fallacious idea that, if a petitioner could simply forgo an appeal and still bring all of his or her claims of trial error in post-conviction, the post-conviction remedy "would largely supersede the remedy of appeal." In fact, a person who seeks to challenge his or her criminal conviction would have little incentive to forgo an appeal and rely entirely on the postconviction remedy since, by doing so, he or she would lose the ability to obtain relief for subconstitutional

trial errors. *See* ORS 138.530(1) (providing post-conviction relief only for substantial denials of constitutional rights, lack of jurisdiction, unauthorized or unconstitutional sentences, and convictions under an unconstitutional criminal statute). In short, although it appears to be broadly accepted as a correct construction of ORS 138.550(1) and, by extension, ORS 138.550(2), *Lerch* is wrong both methodologically and in substance.

Our rejection of the Court of Appeals' interpretation of ORS 138.550(1) in *Lerch* may raise some questions about two of our own cases that interpret a closely related part of that same subsection—*North v. Cupp*, 254 Or 451, 461 P2d 271 (1969), *cert den*, 397 US 105 (1970), and *Palmer v. State of Oregon*, 318 Or 352, 867 P2d 1368 (1994). While *Lerch* addressed subsection (1)'s declaration that "the failure of a petitioner to have sought appellate review \*\*\* shall not affect the availability of [post-conviction] relief," *North* and *Palmer* both analyze the subsection's parallel declaration that "the failure of a petitioner \*\*\* to have raised matters alleged in the petition at trial, shall not affect the availability of relief." In *North*, this court rejected a literal construction of that declaration, which would have permitted post-conviction petitioners to assert claims of constitutional error that were not preserved at trial, on the sole ground that such a construction would undermine the longstanding rule that trial errors must be preserved for appeal (and, thus, without employing our current interpretive methodology). 254 Or at 454-56. Instead, the *North* court held that the provision actually *barred* post-conviction claims of constitutional error that had not been preserved by an objection in the trial court, with some exceptions. *Id.* at 456-57. In *Palmer*, this court opined that the court's interpretation of ORS 138.550(1) in *North* had "become[] part of the statute" and that that interpretation applied not only to claims of a substantial denial of constitutional rights but to other kinds of errors that were cognizable in post-conviction. The court summarized that interpretation in the following terms: "When a criminal defendant fails to raise an issue at trial that the defendant reasonably could have been expected to raise, the defendant cannot obtain post-conviction relief on that ground unless the defendant alleges and proves that

the failure to raise the issue was due to one (or more) of a few narrowly drawn exceptions." 318 Or at 358.

Although our decision with respect to *Lerch* might suggest that *Palmer* and *North* are no longer good law, we need not decide that question at this juncture. Those cases do not affect our conclusion that the Court of Appeals was wrong, in *Lerch*, in interpreting ORS 138.550(1) as barring claims in post-conviction that could have been brought in a direct appeal, regardless of whether an appeal was obtained. And, to the extent that we have concluded that *Lerch* is wrong about the meaning of ORS 138.550(1), anything that the case might be supposed to imply about the meaning of ORS 138.550(2) is also wrong—or, at least, irrelevant.

Having considered the wording of ORS 138.550(2) and the context surrounding that provision that *is* relevant, we conclude that the legislature that enacted the provision did not intend that the first sentence apply beyond its literal terms. The bar on asserting claims in post-conviction that "w[ere] not asserted and could not reasonably have been asserted in the direct appellate review proceeding" applies only when, as stated in that first sentence, the petitioner who brings the claims "sought and obtained direct appellate review of the conviction and sentence." While, under the second sentence of ORS 138.550(2), the claims of post-conviction petitioners who were not represented by counsel on appeal are excepted from that bar if the lack of counsel resulted from the court's failure to appoint counsel, the requirements that attach to that exception are irrelevant to petitioners whose claims would not be subject to the bar in the first instance because they did not obtain an appeal.

Petitioner here did not obtain an appeal, so even if his claims of constitutional error by the trial court could have been raised in a direct appeal, they were not barred in post-conviction under ORS 138.550(2) or any other provision in the Post-Conviction Hearing Act. The post-conviction court erred in concluding otherwise and in refusing to decide those claims.

## IV.   CONCLUSION

For the reasons set out above, we conclude that the post-conviction court correctly rejected petitioner's claim

that appellate counsel was constitutionally ineffective in failing to meet the deadline provided in ORS 138.071(5)(c) for filing an amended notice of appeal and motion for leave to file a late appeal. Petitioner therefore is not entitled to a delayed appeal. But, we conclude that the post-conviction court's refusal to consider petitioner's claims of constitutional error by the trial court, on the ground that they could have been raised on appeal, was based on an erroneous reading of ORS 138.550(2). Regardless of what is required to invoke the exception set out in the second sentence of that provision for petitioners who were not represented by appointed counsel on appeal, the bar set out in the first sentence does not apply to petitioners who, like petitioner here, did not appeal. Accordingly, we reverse the post-conviction court's denial of plaintiff's petition for post-conviction relief, as well as the Court of Appeals decision affirming that denial, and remand to the post-conviction court to decide petitioner's claims that his constitutional rights to counsel and to a jury trial were violated.

The decision of the Court of Appeals is reversed. The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.