250 July 30, 2025 No. 675

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of W. V.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

W. V.,
*Appellant.*

Douglas County Circuit Court
16JU03787; A175342

Ann Marie Simmons, Judge.

Submitted January 30, 2023.

G. Aron Perez-Selsky and Michael J. Wallace filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patricia G. Rincon, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Reversed and remanded.

Powers, J., dissenting.

**HELLMAN, J.**

Youth appeals a judgment that ordered him to report as a sex offender.[1] In his sole assignment of error, youth argues that the juvenile court erred when it denied his motion to dismiss for lack of jurisdiction. In youth's view, the juvenile court lacked jurisdiction to hold his sex offender reporting hearing eight months after it entered an order terminating jurisdiction.

This is the first time we have been presented with a case that requires us to determine how ORS 163A.030(12), ORS 163A.030(1)(b)(A), and ORS 419C.005(4) work together. As we more fully explain below, ORS 163A.030(12) permits the juvenile court to retain jurisdiction for purposes of a sex offender reporting hearing, even if jurisdiction has otherwise been terminated under ORS 419C.005(4)(c) (the provision at issue in youth's case). However, ORS 163A.030(1)(b)(A) requires the juvenile court to make a good cause determination before holding a sex offender reporting hearing outside of the statutory six-month period. Because neither the parties nor the juvenile court had the benefit of our determination of how the statutes work together, and because the court did not make a good cause determination before holding the hearing, we reverse and remand for further proceedings.

In 2016, youth was committed to OYA custody based on his admission that he committed an act which, if committed by an adult, would have been a felony sex offense (attempt to commit sexual abuse in the first degree). At the time, youth was 17 years old. The commitment order was for a period "not to exceed five years" and would "not extend beyond the date [on] which the youth becomes 25 years of age." On September 12, 2018, the state moved to terminate jurisdiction because youth was convicted in adult court in Colorado for "attempting to influence a public servant and

---

[1] Although the caption of the order uses the phrase "sex offender registration," the text of the order correctly refers to the statutory requirement for a juvenile as one of "reporting." ORS 163A.030(1)(a). Accordingly, we use the terms "reporting" or "to report" in this opinion. However, as we previously recognized, "to report" and "reporting" are often used interchangeably with "to register" and "registration." *See State v. A. L. M.*, 305 Or App 389, 395 n 5, 469 P3d 244, *rev den*, 367 Or 218 (2020) (noting the discrepancy in the terminology and concluding that the difference does not affect the legal analysis).

resisting arrest." The juvenile court terminated jurisdiction on September 13, 2018.

Almost eight months later, on May 1, 2019, youth's probation officer filed a notice seeking a sex offender reporting hearing in youth's case. Youth filed a motion to dismiss for lack of jurisdiction, arguing that the juvenile court lost jurisdiction over him on September 13, 2018, and could no longer hold a sex offender reporting hearing. Youth acknowledged ORS 163A.030(12), which states, "Notwithstanding ORS 419C.005 (4)(c), (d) and (e), the juvenile court retains jurisdiction over a person for purposes of this section." However, youth argued that that provision allowed the retention of jurisdiction only if the sex offender reporting hearing was already in progress. In support of his argument, youth relied on ORS 163A.030(1) (b)(A), which provides that a sex offender reporting hearing "must be held *** [d]uring the six-month period before the termination of juvenile court jurisdiction over the person[.]"

The juvenile court denied youth's motion to dismiss. The juvenile court held that ORS 163A.030(12) controlled and that it therefore retained jurisdiction to hold a sex offender reporting hearing. The juvenile court ordered youth to report as a sex offender. This appeal followed.

The question presented in this case involves how to harmonize seemingly inconsistent statutes: ORS 163A.030(12), ORS 163A.030(1)(b)(A), and ORS 419C.005(4). Questions of statutory construction are "questions of law that we review for legal error." *State ex rel Rosenblum v. Living Essentials, LLC*, 371 Or 23, 33, 529 P3d 939 (2023). "We resolve those questions by seeking to give effect to the intent of the legislature as demonstrated by the text, context, and any helpful legislative history." *Id*. In so doing, we interpret statutes to "give effect to all" provisions. ORS 174.010; *see also State v. Clemente-Perez*, 357 Or 745, 755, 359 P3d 232 (2015) (in conducting a statutory analysis we "assume that the legislature did not intend any portion of its enactments to be meaningless surplusage"); *State v. Cloutier*, 351 Or 68, 98, 261 P3d 1234 (2011) (observing that "an interpretation that renders a statutory provision meaningless should give us pause, both as a matter of respect for a coordinate branch of government that took the trouble

to enact the provision into law and as a matter of complying with the interpretive principle that, if possible, we give a statute with multiple parts a construction that 'will give effect to all' of those parts").

Ultimately, our opinion turns on our interpretation of the "good cause" provision in ORS 163A.030(1)(b)(A). But to understand why that statute provides the answer in this case, it is necessary to understand the overall statutory framework that applies in juvenile sex offender reporting hearings.

We start with ORS 419C.005(1). That provision, contained within Oregon's chapter for juvenile delinquency, sets forth ways that a juvenile court obtains jurisdiction over a youth. ORS 419C.005(4) provides that jurisdiction continues until one of the statutorily listed events occurs, including paragraph (c) (the provision applicable in this case), when "[t]he court enters an order terminating jurisdiction." Thus, under ORS 419C.005(4)(c), the juvenile court's jurisdiction over youth ended on September 13, 2018, when the juvenile court entered an order terminating jurisdiction.

But for individuals in youth's situation, the straightforward and logical statement in ORS 419.005(4)(c) is not the end of the jurisdictional story. ORS 163A.030(12), a provision in the youth sex offender reporting framework, complicates the analysis. ORS 163A.030(12) states, "Notwithstanding ORS 419.005(4)(c), (d), and (e), the juvenile court retains jurisdiction over a person for purposes of this section." So, despite having entered an order terminating jurisdiction, the juvenile court did not, in fact, completely terminate jurisdiction over youth. Instead, under ORS 163A.030(12), the juvenile court retained jurisdiction for the specific purpose of holding a sex offender reporting hearing.

Once again, that straightforward text is not the end of the story because ORS 163A.030(1), which sets forth the legal framework for holding the sex offender reporting hearing, also applies in this situation. The relevant portion of that statute provides:

"(1)(a) Except as provided in subsection (6) of this section, the juvenile court shall hold a hearing on the issue of

reporting as a sex offender by a person who has been found to be within the jurisdiction of the juvenile court under ORS 419C.005 *** for having committed an act that if committed by an adult would constitute a felony sex crime if:

"(A)   The person was adjudicated on or after August 12, 2015

"* * * * *

"(b)   Unless the court continues the hearing described in this section for good cause, the hearing must be held:

"(A)   During the six-month period before the termination of juvenile court jurisdiction over the person."

The statute first sets forth a requirement for the juvenile court to hold a sex offender reporting hearing for a youth who was within its jurisdiction. ORS 163A.030(1)(a). The statute also requires that the reporting hearing "must be held *** [d]uring the six-month period before the termination of juvenile court jurisdiction over the person[.]"[2] ORS 163A.030(1)(b)(A). The use of the word "must" indicates a mandatory requirement. *See Umatilla County v. Dept. of Energy*, 372 Or 194, 212, 547 P3d 804 (2024) (recognizing that "must" is "a word denoting an obligation or a command").

With that background explanation, the complexity in this case becomes evident. At the time the state sought youth's reporting hearing, the juvenile court had jurisdiction under ORS 163A.030(12) to hold a reporting hearing. However, if it held that hearing, the juvenile court would violate the statutory requirement to hold the reporting hearing "[d]uring the six-month period before the termination of juvenile court jurisdiction over" youth as required by ORS 163A.030(1)(b)(A), because the juvenile court had terminated jurisdiction over youth eight months earlier.

To resolve the apparent inconsistencies between those statutes, we employ our well-established method of statutory interpretation, which requires that we consider the text and context of the statutes to determine the intent of the legislature. *State v. Gaines*, 346 Or 160, 170-72, 206

---

[2] Because the statute specifically references jurisdiction under ORS 419C.005, the statutory requirement to hold a hearing contemplates that juvenile court jurisdiction could terminate from any one of the four listed bases in ORS 419C.005.

P3d 1042 (2009). Our task when faced with seemingly incompatible statutes is to determine whether there is a way to interpret them in a manner that "give[s] effect to all." ORS 174.010. Here, we readily conclude that that is possible. As we explain below, the answer is found in the exception to the requirement that the court hold a reporting hearing within the six-month window "before the termination of juvenile court jurisdiction." ORS 163A.030(1)(b)(A). The exception authorizes the juvenile court to deviate from that timeline if it "continues the hearing" upon a finding of "good cause." *Id*. Thus, the way to harmonize ORS 163A.030(1)(b)(A), ORS 163A.030(12), and ORS 419C.005 is to conclude that that "good cause" exception applies to all reporting hearings, even those that did not start within the statutorily mandated six-month window prior to termination of jurisdiction.

We start with the text of ORS 163A.030(12), which establishes that the juvenile court retains jurisdiction over a youth for purposes of conducting a reporting hearing. ORS 163A.030(12) does not set forth a new and separate process for the court to follow if the reporting hearing will be held after jurisdiction is otherwise terminated. Instead, it permits the juvenile court to "retain[] jurisdiction over a person for purposes of this section," which indicates that the legislature intended juvenile courts to follow the remainder of ORS 163A.030 in conducting reporting hearings that are held under subsection (12). That includes the requirement to make a finding of "good cause" prior to continuing a hearing that is held outside of the statutorily required six-month window prior to the termination of jurisdiction.

The text of ORS 163A.030(1)(b), specifically the word "continues," confirms that the "good cause" exception applies to all reporting hearings—including those that have never been initiated. Because the legislature did not provide a definition for this commonly used word, we start with the common definition of the term. *See State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006) ("Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense."); *State v. Jones*, 298 Or App 264, 266-67, 445 P3d 358, *rev den*, 365 Or 658 (2019) (explaining that,

when a statute does not define a term of common usage, "we assume that the legislature intended them to have their plain, ordinary meanings"). "Continue" can mean "to carry onward or extend: keep up or maintain *** add to or draw out in length, duration, or development." *Webster's Third New Int'l Dictionary* 493 (unabridged ed 2002). In the legal context, it can mean "to keep on the court calendar: subject to further consideration : postpone by a continuance—used of a legal proceeding." *Id*.

The dissent would hold that the good cause requirement applies only to hearings that started, but did not finish, within the six months prior to the termination of jurisdiction. [3] The dissent reaches that determination, in large part, on its disagreement with our interpretation of the term "continues;" arguing that we "stretch[]" its meaning. 342 Or App at 266 (Powers, J., dissenting). We disagree.

When referring to a legal proceeding, "continue" is commonly used both to extend the time for something that has already started and to extend the time for the proceeding to start in the first instance. For example, parties seek a "continuance" of a trial that has not yet started, and the court can "continue" a hearing that was set, but not yet started, until the next day. *See, e.g.*, *Black's Law Dictionary* 321 (6th ed 1990) (defining "continuance" as "[t]he adjournment or postponement of a session, hearing, trial, or other proceeding to a subsequent day or time; usually on the request or motion of one of the parties"). The text of ORS 163A.030, then, authorizes the court to hold a reporting hearing, whether or not it started within the six-month period, so long as the court makes a finding of "good cause."

Our statutory interpretation framework also allows us to consider any helpful legislative history. *Gaines*, 346 Or at 171-72. Here, the legislative history surrounding

---

[3] Apart from the fact that that interpretation fails to give effect to all provisions in the statute, it rewards the state for failing to even try to comply with the statute. Under the dissent's interpretation, the state would be subject to a *greater* burden if it started the hearing "during the six-month period before the termination of juvenile court jurisdiction," but was forced to seek a continuance, than it would if it never started the hearing and failed to make any effort to comply with the statute in the first place. Such an incentive structure is contrary to the legislative priority on the timing of the reporting hearing.

the enactment of the current youth sex offender reporting scheme supports our interpretation of ORS 163A.030(1)(b)(A). Previously, youths were ordered to report by default at the time of disposition and needed to seek a hearing to obtain relief from reporting. *See generally* ORS 181.809 - 181.826 (2013), *amended by* Or Laws 2015, ch 820. The legislature changed that practice and set the hearing as the default, with youths having the burden to show that reporting was not required. *See* ORS 163A.030(7)(b) ("The person who is the subject of the hearing has the burden of proving by clear and convincing evidence that the person is rehabilitated and does not pose a threat to the safety of the public.").

The result of that change put new burdens on the state as the party seeking to require reporting. The state must now initiate the reporting hearing and must do so within a specific window of time. ORS 163A.030 sets forth a clear path for supervising agencies to follow to meet those burdens and thereby allow the juvenile court to fulfill its statutory duty to "hold a hearing on the issue" of whether a youth is required to report as a sex offender. ORS 163A.030(1)(a). The "county or state agency responsible for supervising" the youth "shall notify" both the youth and the juvenile court "when the agency determines that termination of jurisdiction is likely to occur within six months." ORS 163A.030(2)(a). Once the juvenile court receives that notice, it shall set "an initial hearing date" and provide notice of such to the parties. ORS 163A.030(3)(b), (c). In the context of the state bearing the burden to move forward on the hearing, it is consistent that the state would also be the party that would have to establish the statutory exception to allow the hearing to proceed outside of the statutorily required time frame. Thus, requiring the state to show "good cause" for any hearing that occurs outside the six-month period before the termination of jurisdiction comports with both the explicit terms of the statute and with the allocation of burdens in the statute.[4]

---

[4]  Indeed, in this case it was the state that asked the court to terminate jurisdiction, without first seeking to require youth to report as a sex offender. And it was the state that waited eight months after jurisdiction had terminated to seek a sex offender reporting hearing.

In sum, reading ORS 419C.005(4)(c) to deprive a juvenile court of jurisdiction to hold a reporting hearing if it does not start within the six-month time frame prior the termination of jurisdiction, as youth asserts, fails to give full effect to ORS 163A.030(12), which anticipates that the court retains jurisdiction to hold a hearing, and demonstrates the legislative priority placed on the hearing itself. At the same time, reading ORS 163A.030(12), as the state proposes and as the dissent would hold, to allow the state to initiate sex offender reporting proceedings at any time, without making any further showing, fails to give effect to the mandatory language in ORS 163A.030(1)(b)(A), which requires the hearing to be held within the six months prior to the termination of jurisdiction, unless the court finds "good cause" to "continue[ ] the hearing." Such an interpretation also undermines the legislative intent to hold the hearing within six months prior to termination of jurisdiction because there are important reasons for the timing of that hearing.

Thus, whether the juvenile court has jurisdiction—either under ORS 419C.005 or ORS 163A.030(12)—is only the first step to determine whether a juvenile court can hold a reporting hearing. Even if a juvenile court has jurisdiction to hold the hearing, the juvenile court must still make a finding of "good cause" to permit the hearing to go forward if it does not take place within the six-month period before the termination of jurisdiction. ORS 163A.030(1)(b)(A). Because there was no finding of good cause here, we remand to the juvenile court to make that finding.[5]

Reversed and remanded.

---

[5] We recognize that the record includes an exchange between the juvenile court and youth's counsel in which youth's counsel stated that she waived "timelines" if the juvenile court ruled against her position that the juvenile court lacked jurisdiction to hold a hearing. That waiver does not affect our statutory interpretation analysis here because we "have an independent duty to correctly interpret any statute that comes before us, regardless of the arguments and interpretations offered by the parties." *Strasser v. State of Oregon*, 368 Or 238, 260, 489 P3d 1025 (2021). Moreover, the record is not clear as to what "timelines" youth's counsel was waiving, given that her argument regarding the juvenile court's lack of jurisdiction relied in part on the failure to hold the reporting hearing within the six months prior to the termination of jurisdiction. A valid waiver must be clear and unequivocal, and this one was not. We thus do not view the "timelines" waiver as preventing a remand for a good cause determination, now that we have provided the correct interpretation of ORS 163A.030(1)(b)(A).

**POWERS, J.,** dissenting.

A cardinal rule of statutory interpretation is to "pursue the intention of the legislature if possible." ORS 174.020(1)(a); *see also State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (setting out the familiar methodology of examining the statutory text, in context, along with any legislative history that is helpful). Because the majority opinion stretches the good-cause provision of ORS 163A.030(1)(b) beyond what I see the legislature intended the statutory framework to provide, I respectfully dissent. In my view, even if the hearing required by ORS 163A.030(1) is not commenced before delinquency jurisdiction is otherwise terminated—which is what happened in this case—ORS 163A.030(12) provides that the juvenile court retains jurisdiction for purposes of determining whether an adjudicated youth must report as a sex offender. Further, because the plain text of the framework provides that the good-cause provision of ORS 163A.030(1)(b) applies only if a juvenile court has started and "continues" a hearing, I cannot join the majority opinion.

This separate opinion begins with a brief overview of the somewhat odd factual circumstances that give rise to the statutory interpretation question posed by this case. I then set out in detail the applicable provisions of ORS 163A.030 and provide a brief explanation of how that framework operates in the normal course of juvenile delinquency proceedings before turning to how it should have worked given the circumstances of this case. Finally, I conclude with brief comments on where the majority opinion's analysis strays beyond the text, context, and legislative history of the framework.

## THE FACTUAL CIRCUMSTANCES GIVING RISE TO THE STATUTORY INTERPRETATION QUESTION

The juvenile court adjudicated youth for conduct that, if committed by an adult, would constitute a felony sex crime—*viz.*, attempted first-degree sexual abuse. The court placed him in the legal custody of the Oregon Youth Authority (OYA), but youth absconded after being paroled. The state moved to terminate jurisdiction after learning

that youth was incarcerated in Colorado after being convicted of a (non-sexual) crime in adult court in Colorado. The state's motion to terminate jurisdiction was accompanied by an affidavit providing that, while youth was in OYA's custody, he had been terminated from a community-residential program, then placed in a youth correctional facility where he made "steady progress." When he was paroled to Buckman House in Portland to transition to independent living, he struggled and, ultimately, absconded from supervision. A warrant was issued for his arrest, and the state subsequently learned that he was detained in Colorado. The court granted the state's motion and terminated jurisdiction in September 2018, without holding a hearing on whether youth must report as a sex offender.

Almost eight months after the juvenile court terminated delinquency jurisdiction over youth, the state filed a request for the court to hold a hearing for sex offender reporting, which the court eventually held approximately six months later after there was an objection to the initial hearing date.[1] Youth moved to dismiss the state's request for a hearing, arguing that the request was untimely and that the court lacked jurisdiction. Ultimately, the court entered an order requiring youth to report as a sex offender.

## THE STATUTORY FRAMEWORK FOR SEX OFFENDER REPORTING FOR ADJUDICATED YOUTH

Because youth and the state offer intricate and intertwined statutory construction arguments concerning the framework for sex offender reporting for adjudicated youth, I set it out in some detail. ORS 163A.030 provides, in part:

"(1)(a)   Except as provided in subsection (6) of this section, [concerning waiver of the hearing or failure to appear] the juvenile court shall hold a hearing on the issue of reporting as a sex offender by a person who has been found to be within the jurisdiction of the juvenile court under ORS

---

[1] Although the state's request used a form that asked for a hearing for sex offender "registration" (capitalization omitted), I follow the majority opinion's use of the term "reporting" to avoid confusion with the sex offender framework for adult offenders. *See State v. A. L. M.*, 305 Or App 389, 395 n 5, 469 P3d 244, *rev den*, 367 Or 218 (2020) (noting the discrepancy in the terminology and concluding that the difference does not affect the legal analysis).

419C.005 * * * for having committed an act that if committed by an adult would constitute a felony sex crime [if the person's adjudication falls within applicable dates].

"(b)   Unless the court continues the hearing described in this section for good cause, the hearing must be held:

"(A)   During the six-month period before the termination of juvenile court jurisdiction over the person[.]

"* * * * *

"(2)(a)   The county or state agency responsible for supervising the person shall notify the person and the juvenile court when the agency determines that termination of jurisdiction is likely to occur within six months.

"* * * * *

"(3)   Upon receipt of the notice described in subsection (2) of this section, the court shall:

"* * * * *

"(b)   Set an initial hearing date; and

"(c) Notify the parties and the juvenile department * * * of the hearing at least 60 days before the hearing date.

"* * * * *

"(7)   At the hearing described in subsection (1) of this section:

"* * * * *

"(b)   The person who is the subject of the hearing has the burden of proving by clear and convincing evidence that the person is rehabilitated and does not pose a threat to the safety of the public. If the court finds that the person has not met the burden of proof, the court shall enter an order requiring the person to report as a sex offender under ORS 163A.025.

"(8) In determining whether the person has met the burden of proof, the juvenile court may consider but need not be limited to considering:

"* * * * *

"(12)   Notwithstanding ORS 419C.005(4)(c), (d) and (e), the juvenile court retains jurisdiction over a person for purposes of this section."

The plain text of the framework provides that, under ORS 163A.030(1)(a), the juvenile court "shall hold a hearing" on the reporting requirement for specified youth. ORS 163A.030(1)(b) sets out the timing requirements, and subsections (2) and (3) set out related notice requirements. ORS 163A.030(7) allocates the burden of proof to the person who is the subject of the hearing and mandates that, if the court is not persuaded, it shall order the person to report. ORS 163A.030(8) provides a nonexclusive list of criteria that the court may consider when determining whether the burden of proof has been met. Finally—and important to this case—ORS 163A.030(12) provides that, even if the court's jurisdiction has otherwise ended in one of the ways specified in ORS 419C.005(4)(c), (d), or (e), "the juvenile court retains jurisdiction over a person for purposes of this section." A further examination of that subsection yields additional clues about the legislature's intent regarding the jurisdictional provision of the statutory framework.

ORS 419C.005(4) encapsulates five ways that the juvenile court's jurisdiction could be terminated.[2] ORS 163A.030(12) encompasses only three of those ways—meaning that the juvenile court does not retain jurisdiction for purposes of ORS 163A.030 if its jurisdiction is terminated in either of the other two ways. More specifically, paragraphs (a) and (b) of ORS 419C.005(4) are the termination provisions that are not included. ORS 419C.005(4)(a) and

---

[2] ORS 419C.005 provides, in part:

"(4) The court's jurisdiction over a person under this section or ORS 419C.067 continues until one of the following occurs:

"(a) The court dismisses a petition filed under this chapter or waives the case under ORS 419C.340. If jurisdiction is based on a previous adjudication, then dismissal or waiver of a later case does not terminate jurisdiction under the previous case unless the court so orders.

"(b) The court transfers jurisdiction of the case as provided in ORS 419C.053, 419C.056 and 419C.059.

"(c) The court enters an order terminating jurisdiction.

"(d) The person becomes 25 years of age.

"(e) The court places the person under the jurisdiction of the Psychiatric Security Review Board as provided in ORS 419C.529. If the court also has jurisdiction over the person based on a previous adjudication under this chapter or ORS chapter 419B, placing a person under the jurisdiction of the board in a later case does not terminate wardship under the previous case unless the court so orders."

(b) are provisions in which the jurisdiction of the juvenile court ends because (a) it dismisses the petition or waives the youth into criminal or municipal court, or (b) jurisdiction is transferred to another circuit court for one of several reasons not applicable in this case.[3] That is, the statutory framework shows that the legislature considered the ways that a juvenile court's jurisdiction might otherwise end, and it provided for retained jurisdiction except when jurisdiction ended because another court took over the case or the petition was dismissed. In each of those instances, the original juvenile court would no longer need to conduct the hearing or no longer be the appropriate court to conduct it.

Conversely—and important to this case—ORS 163A.030(12) specifically provides that the juvenile court retains jurisdiction over a person "for purposes of this section" (that is, for purposes of determining reporting) if the juvenile court terminated jurisdiction after entering an order terminating jurisdiction as provided by ORS 419C.005(4)(c); the person becomes 25 years of age as provided by ORS 419C.005(4)(d); or the court places the person under the jurisdiction of the Psychiatric Security Review Board as provided by ORS 419C.005(4)(e). If any of those three circumstances is present, then ORS 163A.030(12) provides that the juvenile court retains jurisdiction to hold the hearing required by ORS 163A.030.

As described above, the juvenile court in this case terminated jurisdiction as provided by ORS 419C.005(4)(c). Thus, that understanding of the framework supports the conclusion that the legislature intended to require the hearing to occur even if the hearing occurs after the court has terminated jurisdiction, and that it expressly provided for the juvenile court to retain jurisdiction for that purpose when it is the most appropriate court in which to hold the hearing. *See State v. K. L. F.*, 301 Or App 666, 667, 456 P3d 376 (2020) (summarily concluding in a *per curiam* decision that the appropriate disposition was to remand the case so that the juvenile court could hold a hearing to give the youth

---

[3] ORS 419C.053 and ORS 419C.056 both involve transferring a proceeding to the juvenile court of a county where the youth resides, and ORS 419C.056 allows one juvenile court to authorize another juvenile court in a different county to facilitate the disposition of the case under specified circumstances.

an opportunity to meet the statutory burden to prove that the youth rehabilitated even though the court already terminated delinquency jurisdiction).

Examining other context of the statutory framework provides additional reasons to conclude that the legislature intended that the juvenile court retain jurisdiction even if the timing requirements for the hearing were not met.

First, the legislature expressly articulated the purpose of the statutory framework for sex offender reporting. ORS 163A.045(1) explains that "[t]he purpose of ORS 163A.005 to 163A.235 is to assist law enforcement agencies in preventing future sex offenses." The framework itself further shows that the legislature also wanted to balance concerns about the capacity of juvenile offenders to reform and to have individualized determinations before imposing reporting requirements. For example, ORS 163A.030 does not automatically require sex offender reporting as it does for adult offenders; rather, each individual is entitled to a hearing before a juvenile court can impose that requirement. *Compare* ORS 163A.010 (reporting for adult offenders), *with* ORS 163A.030 (reporting for adjudicated youth). The enactment history, which is also part of the context, reveals that the legislature changed the juvenile reporting requirement from an automatic requirement imposed at the time of disposition to the current version, where the decision is whether or not to impose the reporting requirement, and that decision takes place near the end of the court's jurisdiction over the youth, which can take into account if a youth has completed treatment and other programs. *See generally* ORS 181.809 - 181.826 (2013), *amended by* Or Laws 2015, ch 820. Further, the process for adjudicated youths allows an opportunity for the youths to establish that they are rehabilitated and no longer pose a threat to public safety. That difference in treatment for juveniles—that the reporting requirement no longer be automatic and that it should be determined later in the life of the case so that the juvenile court would have more information about the youth's prospects for reoffending—is balanced against the burden of persuasion on the youth and the state policy that the purpose of the framework is to prevent future sexual offenses.

The legislative history also shows that the legislature initially considered a bill that would have been oriented toward a view that youth who completed treatment would be unlikely to reoffend. *See State v. A. R. H.*, 371 Or 82, 99-100, 530 P3d 897 (2023) (discussing the legislative history of ORS 163A.030). Ultimately, however, the legislature enacted a compromise bill, in which reforms that included individualized decisions about reporting and moving the time for those decisions to the end of the juvenile court's jurisdiction were balanced against concerns about recidivism and public safety. *See id.* (describing compromise based on the Oregon District Attorneys Association's objections to the bill, which "led to negotiations with the bill's proponents[;] * * * the parties reached a compromise that was reflected in proposed amendments that the legislature later enacted"). In describing the legislative history, the Supreme Court explained:

> "Th[e] negotiated amendments changed the standard of proof from a preponderance of the evidence to clear and convincing evidence, shifted the burden of proof from the state to the youth, and added the 18 enumerated factors that the juvenile court 'may consider but need not be limited to considering.' ORS 163A.030(8). * * * In short, the legislature approved a compromise bill that did not provide a presumption in favor of relief for a youth—whether or not that youth had completed sex offender treatment—despite being presented with a substantial body of research that indicated that such a youth is unlikely to reoffend."

*Id.* at 100.

In sum, I would conclude that the text, context, and legislative history of ORS 163A.030 support construing the jurisdictional provision in ORS 163A.030(12) as extending—for purposes of the entire statutory section— the juvenile court's jurisdiction even if the hearing that ORS 163A.030(1)(a) requires was not held within the time requirements imposed by paragraph (b) of that subsection.

### THE DIFFICULTY THAT I HAVE WITH THE MAJORITY OPINION'S ANALYSIS

Turning to the majority opinion's analysis, I respectfully disagree that the good-cause determination under ORS 163A.030(1)(b) is applicable under the circumstances

of this case. In my view, the majority opinion incorrectly sees a potential inconsistency where there is none. ORS 163A.030(1)(b) and ORS 163A.030(12) are not at odds with each other because they address two separate issues. As described above, paragraph (1)(b) sets out the procedural timing requirement when the court still has delinquency jurisdiction, whereas subsection (12) provides the court with limited jurisdiction after delinquency jurisdiction has otherwise ended. Those two subsections should not be conflated.

Further, in erroneously concluding that the subsections are incompatible, the majority opinion stretches the meaning of "continue" to a hearing process that had not even started, let alone been requested. A court can setover or continue a hearing that has been scheduled or that has begun and not finished, but in no sense of the ordinary meaning of "continue" should the good-cause provision apply in this case given that the state did not request a hearing until well after delinquency jurisdiction had ended. We need not—and should not—refashion the framework by adding in a good-cause requirement where the legislature did not explicitly provide for one.

To be sure, the statutory framework in ORS 163A.030 for adjudicated youth provides that, within six months before the jurisdiction of the juvenile court is likely to be terminated, the juvenile court is required to hold a hearing about whether the youth should be required to report as a sex offender. The juvenile court may continue that hearing for good cause, even if that takes the hearing past the date that jurisdiction is otherwise terminated. That is, under a proper view of the framework, the good-cause determination in ORS 163A.030(1)(b) comes into play when a hearing process has begun before delinquency jurisdiction has been terminated.

Under the circumstances presented here, even if the hearing is not commenced or continued before jurisdiction is otherwise terminated, ORS 163A.030(12) provides that the juvenile court retains jurisdiction for purposes of "this section," which means all of ORS 163A.030. The timing provision in ORS 163A.030(1)(b) is not jurisdictional and

does not create an exception to the jurisdictional provision.[4] Accordingly, because I would affirm the juvenile court's order without a remand, I respectfully dissent.

---

[4] I would also reject youth's arguments on appeal. First, construing the timing provisions as depriving the juvenile court of its jurisdiction over youths who would otherwise be required to prove that they were rehabilitated and no longer posed a threat to public safety to avoid imposition of sex-offender-reporting requirements would be inconsistent with the legislative intent to require the juvenile court to individually determine whether a particular youth is required to report. It would also be inconsistent with the express legislative purpose for the reporting requirement, *viz.*, "to assist law enforcement agencies in preventing future sex offenses." Considering the burden of proof and the entire statutory framework, I would not conclude that the legislature intended for youths to receive a windfall of avoiding sex-offender-reporting requirements altogether for any of the possible reasons that the juvenile court might fail to hold the hearing within the required time.

Second, there may be other ways of enforcing the specified timing provisions such as a mandamus proceeding (if a youth otherwise meets the legal requirements) that would not involve precluding the juvenile court from ever holding the required hearing. To be sure, there may be limits on how long after juvenile court jurisdiction was terminated that the reporting hearing could be held. I need not delve into those issues, however, because they have not been raised in this case. Suffice it to say that, construing the framework as I have above, I have not foreclosed the possibility that there are legal consequences for failing to hold the hearing at the specified time or that the juvenile court's authority to hold the hearing "whenever" (as youth argues) may have other limits that are not raised in this case.